Two cases today, two for argument and two that will be submitted on the briefs. The first case is number 2008-7120, Gamble v. Department of Veterans Affairs. Mr. Moran. Good morning, Your Honor. Good morning. May it please the Court. Good morning, Your Honor. The question presented in this appeal is whether a veteran who applies for disability benefits has a due process right to explore the basis of an adverse medical opinion by serving interrogatories on the reporting physician. And we would submit that he does. As we explain in our briefs, many of the courts who address the issue in the Social Security context, for example, have concluded that constitutional due process requires that an applicant for Social Security benefits has a right to cross-examination of the witness. But he didn't ask for it here. That's true, Your Honor. He didn't request anything that was denied to him in this regard, right? He didn't ask for interrogatories. He didn't ask for a subpoena. There was no instance of him making a request that the government denied him. That's correct, Your Honor. Do I have to go all the way to notice, which very few cases have gone so far in the Social Security context, all the way to notice being required in order to satisfy due process in this case? Well, I would respectfully disagree, Your Honor. We have a situation here, Your Honor, where two options were given to my client to claim it. Are you disagreeing with the notion that not a lot of cases have gone so far as to say notice is required in the Social Security context, or are you disagreeing that this case is somehow different from them? I'm disagreeing with the second. And on the first, I can't quantify for you, but I think well-reasoned decisions have said that where there are not options laid out to a person for a certain avenue and where they haven't been given to that individual claimant, that there can't be found to be a waiver or some type of a problem with the fact that they didn't request it. And I'd point, Your Honor, to the Wallace case, for example, out of the Third Circuit, which is cited in our briefs. And in the Wallace case, what happened was even when represented by counsel, the counsel was never told that they had an opportunity to cross-examine the reporting physician. And the Third Circuit found that that can't be a waiver. When options A and B were given and option C wasn't given, as in here, in this circumstance, he was given the option of submitting adverse evidence or submitting argument, but he was never given option C of submitting interrogatories. There simply can't be a knowing and voluntary waiver in some regard of his due process rights. Knowing and voluntary waiver is different from forfeiture. The Supreme Court recently had an opinion you may be familiar with, the Puckett case. Yeah. In which the court really did, well, I won't tell you what it's about. You know about it. Not terribly, Your Honor. Okay. Basically, it says waiver really isn't the right analysis in a situation where somebody simply does not invoke the particular procedure that is available to them, as opposed to affirmatively waiving a right that they have, as in waiver of the right to counsel. Yeah. This strikes me as falling more in the category of forfeiture by virtue of non-assertion of something that is now claimed to be a right. I would respectfully disagree. Fall in that category. Oh, I'm sorry. I would respectfully disagree, Your Honor. I don't think that there can be a forfeiture of something that wasn't available or offered to him. I mean, the point here, here's the rub. He was never told he had the opportunity to submit interrogatories because that avenue was never made available to him. The idea that somehow he forfeited or waived or whatever you want to call it in this circumstance, any rights, we have here a situation where one of our nation's veterans was not represented by counsel at that point in time. He was represented by a service officer who was not an attorney and who the record indicates didn't even read the file, that somehow he could have forfeited constitutional rights or waived his constitutional rights. Did you say he was represented by a service representative who was not an attorney? That's correct. And appendix page one in our supplemental reply brief indicates quite clearly that he said he hadn't even reviewed the file. So, I mean, there's even a tacit acknowledgment, I would suggest, in the government's opposition brief on this subject. In a footnote, they drop a note saying something to the effect of, if he were unrepresented, you might have an argument, but here he was represented at that level. And we would submit that the idea that a service officer who had never read the file and who wasn't an attorney is not representation of the type we're talking about. What do you think, if there is a notice requirement, what form do you think that notice requirement should take? And as a predicate for my question, let's assume that there are different ways to protect his due process rights. Interrogatories is not the only route to get to protection. Obviously, there are different ways and different situations. What would be the kind of notice that you think would be constitutionally sufficient? I would say that he at least has to be apprised of his right to submit interrogatories. But wouldn't you agree that he doesn't actually have a constitutional right to submit interrogatories if, for example, he has a right to the presence of the doctor and an opportunity to cross-examine? Yeah, but that's the problem, Your Honor. I would submit, and I think we try to lay it on our briefs, I would submit that due process requires that he be provided some avenue to look under the hood. Right, OK, but that's why I'm asking, how would you articulate the right to look under the hood in a notice? Because you can't say you have a right to interrogatories because that's not the only way to look under the hood. Right, and to what extent should that notice or would that notice be required to be detailed? Oh, I don't think, and let me stress, Your Honors, I'm not trying to push off the responsibility of this to somebody else. The exact parameters and wording of the notice is something that's not in my day-to-day job. But it would at least have to put him on notice of the fact that he had this opportunity. To try to answer your question, I really do want to try to directly answer it. Would he have an absolute right to serve in interrogatories? Would they have to make him aware of that right if he had an absolute right to cross-examine the witness? I would suggest not because that would provide him with some mechanism to look under the hood. What we're saying in this appeal is all we're asking for is… If they had some blanket notice that said you can provide adverse evidence, you can provide this, you could issue a subpoena when he's less than 100 miles away. Wouldn't that even get more confusing ultimately by listing things that he really isn't actually entitled to because in this case the doctor doesn't fall within the 100-mile limit? Right, and that's the problem, I would say to you. It certainly would be confusing, but in this circumstance he had no right to look. Sorry, I didn't mean to interrupt you, Judge Moore. I was interrupting you, but I thought that you told Judge Bryson that no, there wouldn't be an absolute right to be made aware of the right to interrogatories. What I'm suggesting to your honors is that every one of these veterans who has an adverse medical opinion against them has some due process right under the Constitution to test the merits of that. What was considered, what wasn't considered, how long they spent with a file, what the qualifications were, I would submit that's a basic due process right. Even if we agree with you that it's a due process right, there's a question of whether in this case the right extends so far as to encompass the notice with regard to interrogatories because he didn't request them, so it's not even a do you have a right to interrogatories. That's not what you're arguing to us today because he didn't request them and he wasn't denied them. You have to go even further and say there's a due process right to be notified of all of the avenues that are available to you for opposing the decision and that's a lot further. You realize, of course, we could write an opinion that says we don't have to decide the issue whether there is or not due process because in this case, even if there is, it doesn't go this far. What I'm trying to help get you to focus on is how far does it really need to go. I respectfully disagree, Your Honor, that that would be the avenue that would be the appropriate route for the court to take in addressing this. Isn't that exactly the route the Supreme Court took in the Social Security cases and lots of other circuits have taken in those as well? Oh, no. Most of the circuits in the Social Security cases have come to the conclusion that, of course, due process allows for interrogatories. I know that doesn't answer the notice question quite yet. The case that I'm aware of that's really addressed this point on where someone wasn't at least told of their right to issue a subpoena or ask for a subpoena because in the Social Security context, the claimants are told that they have the opportunity to subpoena and get the cross-examination. In the Wallace case, what we had is a case that I think is directly on point out of the Third Circuit where in a post-hearing type of situation, the lawyer wasn't told there was an opportunity for cross-examination and the Third Circuit said you can't say that he forfeited or waived or that there was some problem with us reviewing this on appeal because he was never told he had that option. I guess when we get to the threshold issue of whether or not he has some availability to look under the hood, and all we're arguing for, look, if the court wants to go so far, although I don't think it's really the issue presented, as to say, we have a right to cross-examination of the doctor, which is what most circuits have said. I mean, the Liddy Court said in 1990, 20 years after Perales, that no court had decided by that point in time that applicants didn't have the right to cross-examination. If you wanted to go that far, then that would satisfy it because he'd have an opportunity to ask questions live and look under the hood. All we're saying in this circumstance is when we get to the balancing test for due process, Matthews versus Eldridge, we're just asking for the lesser of the two. We're not trying to impose ridiculous burdens on the Veterans Administration. We want our guy to be able to say, look, for example, here's a bunch of medical evidence that head trauma can cause cataracts. Send it in an interrogatory to this physician and say, does that change your opinion? Even if you look at the Matthews factors, you look at the first factor, how the private interests of the Veteran would be affected. In this particular case, you've got a bit of a problem because the qualifications of the physician were not challenged. The request was never made for a personal hearing. An attempt was never made to subpoena the doctor, nor was there a request to submit any sort of interrogatories, to do anything to confront directly the witness. But instead, your client went the conventional route provided by the procedures and submitted evidence contradicting the evidence that was submitted by the VA physician. So don't you have a problem, even if we agree that there's a constitutional right of due process here, with the particular request you're asking us to provide? Well, I don't think so respectfully, Your Honor, and I hope I'm addressing the panel's questions adequately in this regard. But if you agree with me that there's a constitutional right to at least interrogatories, right? There's the less burdensome and the more burdensome. There's two ways to look under the hood, as I use that phrase we've now been using it. You can ask questions in writing, or you can ask questions orally. It's not necessarily the universe of possible ways to challenge evidence. Well, you can challenge evidence by submitting rebuttal evidence, which is what he did. Let me move to that. If I could follow up Judge Lynn's question. Let's look under the hood and see what's there in this case. What you've got is this statement by the doctor, and I take it that there really isn't anything in the statement that you take issue with except the next to last paragraph, right? The search of the literature and the question of whether a contusion on the head could cause cataracts. Right. And the doctor says that she's searched the literature and hasn't found anything to support that, and you challenge that. That's really the sum and substance of your challenge, correct? That's the sum and substance of what he could do because he didn't have the right to ask questions. No, no. I'm asking you now to look back and say what, if anything, in the rest of what she submitted, would he have been interested in or could realistically challenge? Because most of this is just straight medical history, which I take it is not disputed. Right. Right. So that's the paragraph that you're concerned with, right? Two paragraphs, actually. But the paragraph before it says what the ideology of cataracts is and lists things and fails to list. But those two paragraphs are the sum and substance. Yeah. If you take the first and you don't disagree with anything in the previous paragraph, you just think that they should have had contusions. Right. Had contusions. Now, on that, why isn't it not only a sufficient ground but maybe even the best way of proceeding to challenge somebody's assertion that I've searched the literature and I didn't find X to introduce evidence or either in the form of the literature or in the form of a doctor who does a search and says that doctor doesn't know what she's talking about because I've searched the literature and I found A, B, C, D, E, and here they are. Right. Why isn't that not only an adequate basis for challenging that evidence but the most effective basis? Yes, that may be one of the most effective bases, Your Honor. If it is, why doesn't that satisfy due process? Well, here's the problem, Your Honor. The board is a practical matter in this case and is a matter of the record in this case. Found that to be the most probative evidence of record, the VHA physician's opinion. Well, because he didn't come back with very much. He came back with, as far as I can see, one thing that he pulled off the Internet, which was not terribly powerful. Well, you see, that's why we have to look under the hood. Well, but the point is, I mean, the fact that he couldn't find anything that was contrary, he had an opportunity. I mean, if there was a lot out there that was contrary. She was saying, well, I don't think that asbestos causes mesothelioma. Okay. That's her opinion. He would be able to bring in a ton of contrary evidence. Why does he need to cross-examine a doctor who says that when the contrary evidence would be powerful? Now, if this were that situation, wouldn't that be sufficient to satisfy due process? Well, we submit that this is a slightly different situation, but in any circumstance, an important one in which to be able to ask the physician questions. From an exemplary standpoint, she says she didn't find any literature. Your Honor points out, in your opinion, from reading that, I believe, and I don't want to misstate, it's something, but it didn't seem to be very much what he submitted, if that's a fair characterization of what you just told me. There was one item, right? Right. Two items, actually. There was an item in the regular appendix, which was one item out of the medical literature, and then if you look at our reply brief, which it could be clearer, I admit, at pages three and four of the appendix attached to the reply brief. Oh, I see. That was submitted. There's a digital reference of ophthalmology. That was also submitted. This is the JMA. Just before the JMA, Your Honor, two pages earlier of the reply brief. It's page three in handwriting of the appendix. You see the digital reference of ophthalmology? Oh, I see. And that was submitted along with the item that's on page 32 of the reply brief? That's correct. If you look at the bottom, it says, non-perforating injuries such as contusion or concussions are associated with cataracts. I know I'm out of time, but I'd like to answer your question if I could. That's all right. We'll extend your time. Thank you. What we have here is a situation where a 47-year-old man has two lenses replaced because of cataracts, and he submits literature associating concussions with cataracts. Now, you ask, Your Honor, why isn't that the best thing he could do, to try to undermine what the physician said? But I submit to you the board still said the most probative evidence of record is what this physician said. What would have happened, not far-fetched, mind you, if he had had an opportunity to submit an interrogatory like we might do in a patent case and say attached as Exhibit A is this medical literature? Does this change your opinion? Or how long did you spend looking for this literature? Or what background and specialty do you have in this particular item? Or how long did you spend considering this file? Might have been able to even get to the point where the physician, in good faith, because it's supposed to be a non-adversarial system, would have withdrawn that opinion having looked at that literature, in which case the most probative evidence would have at that point disappeared. The bottom line is this. We all know this from our practical other cases that we see. It is not necessarily sufficient, and usually is not sufficient, if someone puts in, let's say, an expert report, for you to say, OK, I'll put in my own expert report, but not be able to depose, ask interrogatories, or cross-examine. Because when they look and weigh the value of the evidence, which is something that the board said that they had to do here, look at the nature of it, the credibility of it, they're not able to fully do that because there's undisclosed information that is in no way available to the veteran, in no way available if he doesn't have the right to ask questions. How long she spent, what she considered, and whether her opinion would change if given certain evidence. And in those circumstances, we would submit to you, Your Honor, that due process would require some mechanism. And what we're doing here is we're trying to take Matthews v. Eldridge head-on, Your Honor, which is the third prong of that test says, how much is the burden going to be on the government? We want the system to work well. We don't want it to slow down. We're not suggesting, like in the Social Security context, where most courts have said you always can cross-examine, that you have to drag the physician there. All we're saying is there's got to be some way to really test that opinion. And we'd prefer to do it, and we suggest doing it in the least intrusive of the two ways. One final point, I know I'm out of time. The threshold issue, I'd point out, Your Honor, of whether due process applies to an applicant versus a recipient, I think is something that my partner, James Barney, on another pro bono case, has argued before you, I think, maybe in the Eldridge case. Yeah, that's the Edwards case. And so I'd just point out, Your Honors, that there is another panel that may be considering it. There are actually several of those cases floating around. It seems to be the issue du jour. Okay. But it's also true that the Supreme Court has – and on occasion, I think the Supreme Court in, if I recall, Ling v. Payne, maybe even in Walters, I think they may have also said pointedly that they had not decided the issue of applicants for benefits as opposed to beneficiaries, as in Goldberg, who are subject to having their benefits. The one thing I'd encourage you to do, Your Honor, though, on that, that's true that some courts still haven't decided the issue. The Supreme Court in particular. Well, they have and they haven't, right? Because Perales was an applicant. But after Perales in both Walters and Ling, they said, we haven't decided. So I take their later word to be their characterization of Perales. Agreed. And my only point on that, Your Honor, and I know I'm pushing forward. My only point on that, Your Honor, is if that issue is being addressed here or in other cases that you're considering, I would very, very much encourage you to look at just two decisions which really take a catalog of all the different court decisions. One, of course, is the Cook-On-Bond case Judge Garris has discussed, where he talks about five different circuits that have ruled that an applicant has a right to it. But maybe the best case is the Millett case out of the Fourth Circuit. And there they looked at 13 different decisions by 11 different courts and said that no court, no court had accepted this kind of false applicant versus recipient distinction.  It's essentially a social contract, even though it's in the law also, that when our veterans go off to war and they're injured in times of war or when serving our country, it's not an abstract wish. It's not some kind of hope that they might be taken care of by our country for their injuries in serving our country. It's called basic entitlement in the statute. It's an entitlement, and we think squarely satisfies the decision in Roth, which says that if you have an entitlement to property, then you have a due process interest in it. I could think of no more important situation to say that people have an entitlement to services and to benefits than our veterans do having been injured when serving our country. Thank you very much. We'll reserve your rebuttal time. Oh, thank you, Your Honor. Very well. Now, Mr. Lester, if you need some extra time in order to even things up, we'll allow you extra time. Thank you, Your Honor. I'll take your lead on that, though. May it please the Court. Your Honor, I certainly would not want to suggest that the Court duck an issue that it needs to decide, but this is a case, we believe, where the Court could duck the procedural due process issue in light of the facts of this particular case. Let me ask you this, and maybe I'm asking you a question  What is the government's position with respect to the issue of the applicability of due process in the Social Security connection? That has been litigated many times, and most of the cases, as far as I can see, not all, most of the circuits, seems to have said that the property interest line is crossed in the Social Security setting. That is to say that there is a property interest by virtue of your participation in the Social Security system, such that you are entitled to due process protections when you make an application for benefits. Well, I certainly don't want to step on the Solicitor General's toes or the toes of other attorneys in other courts that are actually dealing with Social Security applicant cases, but my understanding is that our position has been, as we discussed in our brief, that there is, first of all, as the Court has already identified, in Ling and other cases, the Supreme Court has stated that it has never held that applicants for benefits are in fact covered by procedural due process protections. We agree, obviously we have to agree with that point, and the idea that applicants are covered by those protections are positions they are not. There are, in the Social Security arena, certain statutory protections and statutory requirements that apply to hearings that, certainly from a statutory basis, need to be followed, but those protections do not necessarily rise to the level for an applicant to a constitutional level that certain procedures are mandated. In the VA cases, we don't have the same statutes that apply in the Social Security arena with regard to application of APA-type procedures. Although both SSA and VA cases are non-adversarial in nature, the VA has a different scheme of how things work, and the VA court, as the Veterans Court recognized here, although procedural due process protections don't apply, certainly the VA adjudicatory process does require a fair process. That doesn't necessarily mean that the Constitution is invoked with regard to due process rights, but in the end, certainly if we look at fair process, that's sort of what the due process benefits are, as protections are tried to measure as well. In this particular case, when we look at the particular argument that's being raised here, that there's some kind of a right at the board level to interrogatories in response to independent medical exam physician's report during board proceedings, certainly the process that is provided here, which is identified in the regulations, which is after the BVA requests the physician's report, the physician's report is submitted, the regulations provide a procedure for the claimant to obtain notice. First he gets notice that a request is being made for a physician's report, but when the physician's report is submitted, he receives notice that it has been received by the board, and he gets a copy of it, and he has 60 days to respond with evidence or argument. That argument... But he doesn't have a right to confrontation? Certainly there are... Clearly you acknowledge confrontation because you've got the subpoena, but you balance it against sort of unreasonable demands by limiting it to within 100 miles, but interrogatories are unquestionably a less burdensome alternative, not more burdensome than the subpoena would be. You don't have travel, you don't have to take a whole day, a doctor could answer maybe just one or two questions, it could be answered very quickly, so in the Matthew versus Eldridge world of balancing, interrogatories seem like a very small price to pay to satisfy the right of confrontation, whether we're talking about either a fair process or due process requirement. Well, the issue, as you pointed out, Your Honor, is whether he had a fair process. It must have been interrogatories. The issue here is that there must be a specific notice that interrogatories are available, but in the next case will we have... There must be a notice for requests for admissions, for document production requests, for actual cross-examination. Where does it stop? And why particularly interrogatories as opposed to... Well, you have a very... Isn't the statute supposed to be proclaimant and these people aren't represented by lawyers? So, I mean, aren't there these sorts of protections that ought to be done by the government? I mean, these are veterans. Well, and the process here provides those protections, we believe. The notice allows him to make any kind of... submit any kind of questions or questions about the report to the board, and the board judge is entitled, if it identifies deficiencies or problems or questions about the physician's report, can always remand to the RO for further development. If there's... And particularly if we look at the types of questions that Mr. Gamble says in this case, he would have asked or should have been allowed to ask, which are identified both on pages 23 and 24 of Mr. Gamble's reply brief, and on page 44 of the appendix that he submitted attached to his initial brief. The types of things that he's talking about really deal... He says the qualifications of the physician, the expertise and the information that wasn't considered. He actually, as the court already recognized, submitted evidence that he thought he'd found on the Internet and called this into question. But Mr. Morin says, I think with some force, that there isn't any of this, including submission of other materials. Suppose he did come up with six things off the Internet that said, all of which were consistent with his position, that contusions can cause cataracts. There's nothing as valuable as saying to the person who has said that the literature does not support that, what do you say about this? Do you think these are wrong? Did you look at them? Do you think there's some explanation, such as you didn't spend a lot of time at this or you were remembering from your medical school days something that was thought to be the case then but is no longer the case? Those kinds of probing questions that go to the ideology of the opinion as opposed to the expertise of the person holding the opinion would seem to be pretty useful, don't you think? Well, but certainly the board judge has that right then. If information is submitted that raises questions, again, has the right and ability to remand to the RO. Would that be the only way to do it, to remand? Or does the board judge have the discretion to say, okay, yeah, you've submitted a few interlocutories, let's send them over to the doctor and see what she says? Well, essentially, I mean, that's sort of, although it wouldn't be called interlocutories per se, and there's nothing in the regulations about interlocutories, but submitting questions to the RO in response... But without going back to the RO, I mean, we all know that sending something back to the RO... Yeah, okay, but sending something back to the RO is a formula for years of delay. But I'm just wondering whether that can be done in the context of the board hearing. Well, the board could also request that the physician be... You know, there certainly is teleconferencing that can happen. Now, certainly, it's unusual. It would be unusual for a physician to be called in to testify or to provide evidence. But certainly, the board judge has discretion to run the board proceedings. So, you know, but I think probably most likely would be a remand to the RO, which doesn't necessarily need to mean years and years of delay. I'm not going to try to superimpose on the board and the RO how they run their proceedings, but certainly that's how the procedures work. And there are procedures in place to protect the claimant, which, again, we're talking just about a fair process, not exactly the process that somebody wants. Just is the process overall fair? Without getting into the idea of whether this actually invokes procedural due process protections as outside just a fair process. I'm sorry, Your Honor. I'd like to get back to the notice for a minute. And clearly, there's no dispute here that the veteran would have a right to subpoena a witness if the doctor was within 100 miles of the place of the hearing. But the notice did not include anything to apprise the veteran of that right. Well, that notice, but there certainly are regulations and there is notice at the outset of the case about certain procedures that are, you know, just as a sort of a form that goes out as a part of that. Well, we're talking about something that is significant that affects at least rights of fairness here. So it's not just a matter of whether it's a form or not. And so my question is, is it your position that the notice doesn't even have to apprise the veteran of the right to subpoena the witness? Well, I mean, if every... I guess if the question is, does every single document that goes to the claimant have to identify all procedural rights that are available to him? No. I mean, the regulation identifies what the notice is. Is the notice sufficient if it identifies no rights? Well, no, because the regulation identifies that it must inform the claimant of his right to submit a response to both with evidence and argument in response to the independent medical report. And it's sufficient if the notice is that generic? Well, the notice in this particular case... Do we have a copy of that notice, by the way? Yes. I'm trying to look in my notes to see what page that would be on. I'm sorry. I can get it for you. Thank you. It's on pages 28 through... Sorry, 28 through 30 of the appendix. 28 through 30 of the original appendix? Of the blue appendix. Yes, and it's out of order to, Your Honor. It's page 28, then page 30, then page 29. Oh, yeah. It sort of goes out of order just a little bit. And Mr. Gamble's response to the notice, which includes sort of the claim form, is in the government's appendix, supplemental appendix, page 3. Now, as far as... Now, that's the notice that accompanied the request for a doctor's opinion, right? This is specific to cases in which there is a... The board makes a specific request to a doctor to provide an opinion. It's not the notice that comes to somebody when they... No. ...exercise, when they file a notice of disagreement or whatever the current... No. No, no. This is simply... Exactly, Your Honor. This is simply the notice that came in response when the medical report came in. I was actually curious about... Well, this is helpful, but is there something more that gets provided to the veteran at the point at which the veteran wants to invoke board appeal rights? What I'm fishing for here is... Let me ask the question more directly. And I don't think that is in the... Is there anything... I mean, the rules of the board are set out in 38 CFR 20.700 and etc., I guess. Are those rules ever either provided to or called to the veteran's attention in any form that's sent to the veteran at any point in this process? It is my understanding that they are. I would want to clarify that with the VA, but I'm fairly certain I saw them, I have seen those. Maybe if... And the issue... I mean, I don't think in this particular case there has been an allegation that Mr. Gamble was never informed of a subpoena right or hearing right. It was that... The issue here is whether... The sole issue has been whether or not he's entitled to notice of his right to submit... Well, that's right, but it may be pertinent if he is... I mean, to the notice question, if he is given notice of a variety of rights, if invocation of one or the other of those rights would have the same value to him, in our view or in the view of the board, as the interrogatory right, right? Certainly, Your Honor. We'd be happy to look through the record in this case and submit as a supplemental submission to the court a copy of whatever notice was provided. Maybe if you and your opposing counsel could get together so you can make a joint submission so there's no dispute about what it was, that would be very helpful. Certainly, Your Honor. In this particular instance, though, again, the sole issue is whether or not, first, the government must provide notice in this response that he can submit interrogatories, which Mr. Gamble thinks it should be limited to five or six interrogatories, which is identified on page 28 of his reply. Say we find there is, in fact, a due process right, and then we say he should have had a right to submit interrogatories. I imagine your argument is most likely there's a slippery slope. Where does it stop? What other things do we have to make them aware of? Well, give me examples. Real-world examples of just how catastrophic this is going to be. Well, the big burden, really, is the biggest burden will become the change to the non-adversarial system that we have. I mean, really, the request is to turn these non-adversarial proceedings into something that's very lawyerly with interrogatories and all the kinds of discovery and cross-examination that we have in trials in the Court of Federal Claims, where it is an adversarial system. Here, the whole system is built around the idea of the VA's duty to assist the veteran to develop his case and the other non-adversarial proceeding attributes that come with that. It is not supposed to be where the veteran has to go out and hire a lawyer to do all these things for him and to become basically the advocate who creates sort of the animosity and the anger. I don't imagine that Mr. Moran or anyone else would suggest the interrogatories have to be in some formal pleading sense, that it's just he should have an opportunity to confront, whether it's through questions or otherwise, he should be given a chance to confront. And so I guess what I'm looking for from you is, what is the slippery slope? I don't see the other things on the slope. And I want you to tell me, well, gosh, if you hold he's got a right to this, then are we going to have to also say he has a right to this and this and this? Are we going to have to give him notice of this, that, and the other thing? Are all of these things going to fall? I want to know from you. But that's exactly our point, Your Honor, is, I mean, why five or six interrogatories? Why in the next case won't it be, oh, well, they all said to tell me I needed RFA, a request for admission, or I needed this? There's always going to be some other type of discovery tool that won't be identified in some notice. And further, the more things that are identified in there to a non-lawyer are going to make the veteran have to go out and get some kind of legal assistance to understand what will become a very complicated form when the VA has to try to identify every possible procedure that a veteran might invoke or questions or things the veteran might do to try to combat an independent medical exam report that is put into the record. It's simply that it's difficult for me to identify all the creative things that somebody might be able to come up with that ought to happen in a case. But that's certainly... I think we could take judicial notice of that. And, Your Honor, with regard to the type of notice and opportunity that the veteran has here with regard to the notice of the report and the ability to submit both evidence and argument within 60 days after receipt of the report provides, in essence, really provides the veteran the type of opportunity he's asking here. He can put those questions, those thoughts, into the response. It is a non-adversarial system. The board judge does have discretion to, when valid points are raised, to obtain more information from and require further development by the VA. So, really, I mean, the procedure that is in place, particularly with the types of questions that he's identified in his briefing that he ought to have been able to ask or should have been told he should have asked, those types of things certainly could have been put into the response, and the board judge could have decided what to do with that. The idea that... And if we look, even if procedural due process protections do arise, the second factor in Matthews is the risk of erroneous deprivation of the interest that the procedures use and the probable value of any of additional or substitute safeguards. The safeguards here, if we look at the questions that would be asked, it's very difficult to see, particularly in light of the information that Mr. Gamble did put into the record in response to the medical report, that there really would have been some kind of a change here. So, in fact, the fact that Mr. Gamble didn't do the things that he's saying he wants to know here, we don't know exactly what would have happened, so it makes it very difficult, given the failure to actually do the things that he's saying he should have been told he should do, makes it difficult to sort of guess whether or not there's some kind of... there would have been some kind of change. But, counsel, isn't the fact that you don't know what would have happened if he got the chance to do this his very best argument for why he should be allowed to confront? Well, I think if we look at the second factor in Matthews, it seems pretty unlike... If we look at the questions... You just said we don't know what would happen if he got to do this. I mean, doesn't that sort of undermine your claim that under Matthews nothing would change? Well, again, I probably misspoke a little bit. I overstated it a little bit. I think it's pretty likely... We can see, given that he did submit the evidence that he thought supported the idea that the doctor didn't look, the independent doctor didn't look at or didn't find this particular medical literature, certainly provided the board with the same type of information that he thinks he should have been able to question the doctor about. And if the board had found that to be that viable, again, it could have remanded to the RIO. I am and have been for a long time struggling with the notion that we see again and again that the system is non-adversarial. It is paternalistic. And that certainly is true. That was what Congress had in mind, at least to some extent, preserving. There was some tension there because they were also creating certain absolute rights. But squaring that with the notion of allowing a participant in the system to put his best foot forward. Now, it can be a very paternalistic system to the extent that they might just have a system in which they say, don't worry. We'll consult the doctors. We'll take care of it all. And we'll let you know at the end of the process. We'll send you a letter as to whether you're covered or not. And I don't think any of us would be comfortable with that. The risk of error would go up, presumably, to an unacceptable extent. So we have in place some form of adversarial or confrontational system in which he at least gets to say, no, no, no. That evidence is wrong. Here's the right way to look at it. And once you start down that line, haven't you already walked away from the model of, we'll take care of this. Don't you worry. We'll send you a notice that you get your benefits or you don't. Well, the mixed concept of adversarial to the extent that we feel that this is useful but non-adversarial to the extent that he wants more leaves me with no guidance as to where to draw the line. Well, certainly, obviously, the VA doesn't then advocate, as the evidence is developing, advocate a position. In this particular situation, though, we have the board asking for a medical opinion and then a non-VA doctor providing that opinion and the VA just submitting it to the board. In that instance, it's not the VA creating evidence to support its position that this is not service-connected, the cataracts here are not service-connected. This is a request by the board for an independent review that then a veteran has an ability to respond to. In terms of whether this here is adversarial in nature, becomes adversarial, I guess, only because the independent doctor identifies no service connection or can't find a service connection. But, I mean, I certainly understand your point, Your Honor. I'm just not sure that this is the particular case in which to explore that. And one final question, I'll quit pestering you. The government's position, I take it, is that Section 7 of the APA, that's 556D, that sets out the procedures for hearings, the default procedure, does not apply to VA? That's right. In fact, if you look at the development of the Veterans Judicial Review Act, Congress rejected that idea. There was, at one point, a provision in there in the drafts before Congress that would have done that, but when it was finally enacted, that was not in there. Thank you, Your Honor, for these reasons we'd ask the court to affirm. Thank you. Mr. Morin, your rebuttal? Yeah, I'll be very brief, Your Honor. I just want to address a couple of quick issues. You and Mr. Lester will get together on the issue of what was received by way of general notice, if the record will permit that. Absolutely, Your Honor, and I don't foresee any problem with doing that. Very good. First of all, to just briefly address the non-adversarial aspect of things, it gets to be kind of a misnomer sometimes, right? You've got two sides submitting contrary reports and testimony. I mean, the Skosen case that came out yesterday talks about the applicant having a burden or an obligation to come forward with evidence submitting their claim. I mean, clearly, there are avenues provided for that have adversarial qualities to it and that are permitted. I mean, the very notion that you can subpoena a witness potentially within 100 miles, all of a sudden you have an adversarial aspect that's already to it, so we're not destroying the adversarial nature of the system. And all of us who have been around litigation or reviewed records of litigation know that it's in the scheme of adversarial interrogatories that are quite a bit lower than the confrontations that you'd tend to have in person. But that said, I mean, the Perales case is instructed from the Supreme Court anyway because the Social Security system is supposed to be, and it's been called non-adversarial, and the Supreme Court said in Perales that he did not exercise his right to subpoena the witnesses in finding that the hearsay evidence could be used. A right to subpoena the witnesses, and most of the courts that have addressed the issue have come to the same conclusion that in an adversarial process there's still the opportunity for cross-examination. But what the court pointedly said, and setting aside for a moment the forfeiture issue in Perales, what the court said was 556D is, if not the governing statute, then it's effectively governing because the Social Security statute was equivalent, contains these forms of protection, and that's enough. So here, if it's true that 556D doesn't apply, doesn't that break the equivalence between the Social Security cases and the veterans' cases? Well, I don't think so, Your Honor. I don't think so, Your Honor, because in the Social Security regime, from my understanding of that system, it still statutorily gives discretion to issue those subpoenas, and most of the courts that have addressed the issue, the Liddy Court summarizes this, says no, it's not voluntary or discretionary, it's mandatory, and that's what most courts have found. We would just submit that the idea of this parade of horribles that would come from being able to submit a few questions, whatever the number that would be decided would be, to a physician is a little bit exaggerated. No, well, I think that you're mischaracterizing his parade of horribles. While he wasn't creative with them, I'll grant you, his parade of horribles were noticed. He never actually stood up here and said there's a parade of horribles if you're allowed to submit interrogatories. Where does the government draw the line in the things they have to tell the veteran about and the things they don't have to tell the veteran about? It's not whether he has a right to, so much as whether the government's obligated to tell him he also could explore this avenue for discovery purposes. So that's where the parade of horribles, I think, comes in, at least the way I understood his argument. Well, I mean, I think that's something that could be addressed similarly to how it was addressed in Flatford. If there were provided for notice for interrogatories for the potential for an adverse VA opinion, then the courts would have to perhaps address the issue of whether more was required once there were interrogatories. Flatford, I think, is a very well-reasoned decision. While it doesn't come out, it's a Sixth Circuit case, while it doesn't come out with the absolute right to cross-examination, they said it wasn't necessary here because interrogatories were available. And I think you could end up having those types of decisions that it wouldn't have to be RFAs and cross-examination and all that type of thing, but he needs some mechanism. And one thing I'd really like to focus on, Your Honor, because I didn't think I answered your question well enough the first time around, you asked this issue about notice. And we seem to be trying to look at it as to the threshold issue of, are you saying it's a notice problem or are you saying it's a due process problem with the inability to ask interrogatories? And I would just submit for you, Your Honors, in this case that if you decide, and I think you need to do that in the first place, that due process at least requires the right to interrogatories, then the notice issue should come out of play. He wasn't represented by counsel and he wasn't given the option. He was given two options, A and B. They said, here's how you can respond. It was a closed set. It didn't say in the notice when you look at it, for example, you could do A or you could do B. It says you have two options, A and B. And to find that somehow he had waived or forfeited, as Judge Bryson used that term, his constitutional rights when given choices A and B by not unrepresented by any lawyer at the time saying, I think I'd like option C. That just can't fly. And I'd quote from the Wallace case out of the Third Circuit where he was represented by counsel. And it says, the secretary admits that it might be unfair to find a waiver if Wallace were unrepresented. That's our circumstance. But argues that we should find a waiver here because Wallace was represented by counsel. No waiver could be effective if counsel is not given reasonable notice. Waiver of the right to subpoena and cross-examine witnesses concerning post-hearing evidence must be clearly expressed or strongly implied from the circumstances. And in light of the lack of any provision in the regulations for a subpoena under these circumstances and the failure to notify Wallace's counsel that there was an option to subpoena the consult of witnesses, counsel did not receive the type of reasonable notice that could serve as a predicate for a waiver. And I'd point also to footnote 5 in the government's brief, which reasonably acknowledges that issue, saying that, the government's brief again, although some federal appellate courts have suggested that notice may be required in some circumstances involving unrepresented claimants, see Hudson, that situation is not present here as Mr. Gamble was represented before the board. It's an acknowledgment there that there may be an issue if he's not represented. He wasn't represented. The guy didn't even read the file. Very well. Thank you, Mr. Moran and Mr. Lester. Thank you. Thank you, Your Honor. This is submitted.